**In re AEP ERISA LITIGATION.**

**No. 03–CV–67.**

United States District Court, S.D. Ohio, Eastern Division.

Aug. 10, 2004.

---

Edwin J. Mills, Stull, Stull and Brody, New York, NY, for Plaintiff.

Robert G. Cohen, Kegler Brown Hill & Ritter, Columbus, OH, for Plaintiff and Consol Plaintiff.

Andrew Schatz, Robert A. Izard, Schatz & Nobel PC, Hartford, CT, Gerald Scott Leeseberg, Leeseberg & Valentine, Columbus, OH, Stanley Morris Chesley, Waite Schneider Bayless & Chesley Co LPA, Robert Armand Perez, Sr., Cincinnati, OH, James Edward Arnold, Clark Perdue Roberts & Scott, Columbus, OH, Joseph J. Braun, Strauss & Troy, Cincinnati, OH, Marc A. Topaz, Schiffrin & Barroway LLP, Bala Cynwyd, PA, Richard Stuart Wayne, William Kendall Flynn, Strauss & Troy, Cincinnati, OH, Joseph F. Murray, Murray Murphy Moul & Basil, Columbus, OH, for Consol Plaintiff.

Fred G. Pressley, Jr., Porter Wright Morris & Arthur, Columbus, OH, George S. Wang, Jennifer T. Barall, Joseph M. McLaughlin, Michael J. Chepiga, Simpson Thacher & Bartlett LLP, New York, NY, for Defendant.

Alvin James McKenna, Porter Wright Morris & Arthur, Columbus, OH, for Defendant and Consol Defendant.

Bryan R. Faller, Porter Wright Morris & Arthur, Columbus, OH, for Consol Defendant.

## OPINION & ORDER

MARBLEY, District Judge.

## I. INTRODUCTION

This matter is before the Court on Defendants', American Electric Power Company, Inc. ("AEP"), American Electric Power Service Corporation ("AEPSC"), E. Linn Draper, Jr. ("Draper"), and Thomas V. Shockley, III ("Shockley"), Motion to Dismiss the Consolidated Amended Complaint ("Motion to Dismiss"). For the reasons that follow, Defendants' Motion is **DENIED.**

## II. FACTS

This is an action filed under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, *et seq.* Plaintiffs, Kermit D. Bridges and Selena Plentl, bring suit on behalf of all other persons similarly situated (the "Participants"), who participated in the American Electric Power System Retirement Savings Plan (together with its predecessors,[1] the "Plan"). Plaintiffs seek Plan-wide relief on behalf of the Plan, and on behalf of a class of all Participants in the Plan for whose individual accounts the Plan purchased and/or held shares of the AEP Stock Fund ("Fund") from December 9, 1998 to the present (the "Class").[2]

Defendants are: AEP, a corporation headquartered in Columbus, Ohio; AEPSC, a wholly-owned subsidiary of AEP, also headquartered in Columbus, Ohio, and the alleged sponsor and named fiduciary of the Plan; and two directors of AEP, who allegedly also serve as the principal officers and directors of AEPSC, Draper and Shockley (together, the "Director Defendants") (collectively, with AEP and AEPSC, the "Defendants"). Plaintiffs bring this action pursuant to § 502(a)(2) and (3) of ERISA, 29 U.S.C. §§ 1132(a)(2) and (3).

Generally, Plaintiffs allege that Defendants breached their fiduciary duties to the Plan and the Participants, as set forth in ERISA § 404, 29 U.S.C. § 1104, and the Department of Labor Regulations, 29 C.F.R. Part 2550. Specifically, Plaintiffs make two independent claims:

1) Defendants breached their fiduciary duties by offering the Fund as one of the investment options of the Plan and permitting the Plan to purchase and hold shares in the Fund when it was imprudent to do so (hereinafter "Claim One"); and

2) Defendants breached their fiduciary duties by negligently making misrepresentations and negligently failing to disclose material information that was necessary for the Participants to make informed decisions concerning Plan assets and the appropriateness of investing in the Fund (hereinafter "Claim Two").

1. The Central and South West Corporation Retirement Savings Plan ("CSW Plan") is included as a predecessor plan because AEP acquired Central and South West Corporation in 2000. Thereafter, AEPSC, it is alleged, administered the CSW Plan and offered an AEP stock fund to those plan participants until the CSW Plan merged with the AEP Plan on or about January 1, 2003. Collectively, the two plans are referred to herein merely as the "Plan."

2. Plaintiffs exclude from the Class, however, Defendants, directors of AEP and AEPSC, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

As a consequence of these breaches, Plaintiffs claim the Fund has lost a substantial portion of its value since the beginning of the Class Period, and the Plan and the Participants have been deprived of the value of prudent investment alternatives.

## III. PROCEDURAL HISTORY

Three different ERISA actions were filed in this Court and the Southern District of New York, beginning in December of 2002. On December 29, 2002, the New York case was transferred to this Court, and on July 8, 2003, this Court issued an Order consolidating the cases and appointing lead plaintiffs and counsel. Plaintiffs then filed their Consolidated Amended Complaint on July 23, 2003, and their Amended Complaint on September 8, 2003 (collectively the "Complaint"). Defendants filed their Motion to Dismiss on November 10, 2003, to which Plaintiffs responded.

In their Reply, Defendants argued for the first time that Plaintiffs failed to comply with Rule 23.1 of the Federal Rules of Civil Procedure. This prompted Plaintiffs to file a Motion to Strike, or in the alternative for leave to file a response to Defendants' new argument. By Order of April 15, 2004, the Court granted Plaintiffs leave and accepted the response attached to Plaintiffs' Motion to Strike. The Court gave Defendants ten (10) days to reply thereto, which Defendants did on April 29, 2004. This matter now is ripe for decision.

## IV. STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is constrained to accept as true the allegations of a complaint. *Associated Gen'l Contractors of Calif., Inc. v. Calif. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983); *Lee v. W. Reserve Psychiatric Habilitation Ctr.*, 747 F.2d 1062, 1065 (6th Cir.1984). A motion to dismiss may be granted, "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).

## V. ANALYSIS

◼ Congress enacted ERISA in 1974 after determining that:

[T]he growth in size, scope, and numbers of employee benefit plans in recent years has been rapid and substantial ... [and] the continued well-being and security of millions of employees and their dependents are directly affected by these plans ... [and because of] the lack of employee information and adequate safeguards concerning their operation ... it is therefore desirable in the interests of employees and their beneficiaries ... that minimum standards be provided assuring the equitable character of such plans and their financial soundness.

29 U.S.C.A. § 1001. *See also Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) ("ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans."). Accordingly, trustees administering such plans have statutorily-delineated, fiduciary duties. Per § 404(a)(1):

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances

then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan.

29 U.S.C. § 1104(a)(1). Traditionally, courts, including the Sixth Circuit, have interpreted the statute as imposing three categorical duties upon ERISA fiduciaries: 1) the duty of loyalty; 2) the prudent person fiduciary obligation; and 3) the duty to act for the exclusive purpose of benefitting the plan's participants. *See, e.g., Gregg v. Transp. Workers of Am. Int'l,* 343 F.3d 833, 840–41 (6th Cir.2003). Indeed, "[a] fiduciary breaches his duty by providing plan participants with materially misleading information, 'regardless of whether the fiduciary's statements or omissions were made negligently or intentionally.'" *James v. Pirelli Armstrong Tire Corp.,* 305 F.3d 439, 449 (6th Cir. 2002).[3]

According to the Supreme Court: "[f]iduciaries are assigned a number of detailed duties and responsibilities, which include 'the proper management, administration, and investment of [plan] assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest.'"

*Mertens v. Hewitt Assoc.,* 508 U.S. 248, 251–252, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), quoting *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142–143, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). The Court elaborated further that:

[t]here is more to plan (or trust) administration than simply complying with the specific duties imposed by the plan documents or statutory regime; it also includes the activities that are "ordinary and natural means" of achieving the "objective" of the plan. Indeed, the primary function of the fiduciary duty is to constrain the exercise of discretionary powers which are controlled by no other specific duty imposed by the trust instrument or the legal regime. If the fiduciary duty applied to nothing more than activities already controlled by other specific legal duties, it would serve no purpose.

*Varity Corp. v. Howe,* 516 U.S. 489, 504, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). A fiduciary's obligations are "the highest known to the law." *Chao v. Hall Holding Co.,* 285 F.3d 415, 426 (6th Cir.2002), quoting *Howard v. Shay,* 100 F.3d 1484, 1488 (9th Cir.1996).

Nevertheless, Defendants offer a plethora of arguments in support of dismissing Plaintiffs' claims at this early phase of litigation. First, Defendants aver that the conduct complained of here is the same as that in a pending federal securities action, and Plaintiffs should not be able to circumvent those laws by trying to couch the

---

**3.** The Sixth Circuit recognized in *Krohn v. Huron Memorial Hosp.,* 173 F.3d 542, 547 (6th Cir.1999), that, "[a]lthough the United States Supreme Court has expressly declined to reach the question of whether ERISA imposes a duty on fiduciaries to disclose truthful information on their own initiative, ... we have previously held that '[a] fiduciary must give complete and accurate information in response to participants' questions ...' [and]

that '[m]isleading communications to plan participants 'regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for breach of fiduciary duty,' ' [and] 'a fiduciary breaches its duties by materially misleading plan participants, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally.' '" (internal citations omitted).

same behavior as violating ERISA. Second, Defendants complain that Sections 502(a)(2) and (a)(3) do not permit class-wide relief for monetary damages by the Plan Participants. Third, Defendants contend that Plaintiffs fail to allege sufficiently the fiduciary status of any of the Defendants.

Regarding Plaintiffs' specific claims, Defendants argue that, with regard to Claim One, Plaintiffs have failed to rebut the presumption of reasonableness regarding investments in company stock, and that such investment was required by the Plan and consistent with the Congressional purpose of encouraging employee ownership of companies. As for Claim Two, Defendants argue that the alleged misrepresentations in the SEC-required and Plan-related documents properly are brought under the securities laws and, furthermore, that Plaintiffs fail to plead that any of the statements about which they complain, in fact, are false or misleading. Finally, Defendants argue that Plaintiffs' allegations that the Director Defendants breached their duty to monitor and that all Defendants are liable as co-fiduciaries do not meet the requisite pleading requirements. Plaintiffs, of course, rebut each of these arguments.

### A. Standing & Appropriate Pleading Standard

■ As a threshold consideration, this Court must address the issues of standing and the appropriate pleading standard. Defendants argue that ERISA does not authorize the relief sought by Plaintiffs: monetary relief for Plan Participants in their individual capacities. Rather, Defendants contend, under § 502(a)(2), participants can seek relief only on behalf of the plan as a whole; or under § 502(a)(3), individuals can sue fiduciaries for equitable relief only.

For the most part, Plaintiffs do not dispute the law, but they contend that Defendants either misunderstand or misconstrue the Complaint and the relief they seek. The Complaint makes clear that Plaintiffs are suing on behalf of the Plan, seeking to recover losses suffered by it, such that any recovery would go to the Plan. In addition, Plaintiffs point out that they have standing under § 502(a)(3) because, by its very nature, a participant's claim for breach of fiduciary duty against an alleged fiduciary *is* an action in equity. Plaintiffs argue, moreover, that the Department of Labor, the agency responsible for interpreting ERISA, maintains that a claim for monetary damages by participants against fiduciaries for their alleged breaches is equitable relief, actionable under § 502(a)(3). *See, e.g.,* Brief of the Secretary of Labor as Amicus Curiae in Support of Appellant and Reversal of the District Court, submitted in *Callery v. U.S. Life Ins. Co.,* 03–4097 (10th Cir.2004).

■ In their Reply, Defendants do not contest these arguments, but they argue for the first time that Plaintiffs must meet the requirements of Federal Rule of Civil Procedure 23.1, but Plaintiffs have failed to do so. According to Defendants, "in order to bring a claim derivatively on behalf of an entity, a plaintiff must comply with the requirements for derivative suits set forth in Rule 23.1."

A review of Rule 23.1, however, reveals that Defendants overstate the applicable proposition of law. Rule 23.1 is very specific; it reads:

> In a derivative action brought by one or more *shareholders* or members *to enforce a right of a corporation or of an unincorporated association,* the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege. . . .

Fed.R.Civ.P. 23.1 (emphasis added). Clearly, the Rule does not apply to *all*

derivative suits, as Defendants suggest. The Supreme Court so held in *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 535 n. 11, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984), stating that, "[t]he fact that derivative suits are brought on behalf of a corporation does not mean, however, that all suits brought on behalf of a corporation are derivative." Other courts, likewise, have rejected Defendants' argument and clarified that:

> [a]lthough this suit may be characterized as "derivative" in the broad sense, it clearly does not fall within the terms of Rule 23.1 ... [Plaintiffs] are suing as plan beneficiaries to enforce the right of the plan against its fiduciaries. When a trust beneficiary brings a derivative suit on behalf of a trust, "the specific provisions of Rule 23.1 are not controlling."

*Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1462–1463 (9th Cir.1995), quoting CHARLES A. WRIGHT, LAW OF FEDERAL COURTS § 73, at 525 (5th ed.1994). This Court agrees. Plaintiffs do not have to meet the requirements of Rule 23.1.

Given the Department of Labor's position,[4] and because Defendants offer no other rebuttal to the clarifications of the Complaint provided by Plaintiffs, the Court finds dismissal is not warranted based on Defendants' arguments that Plaintiffs lack standing.

■ Defendants argue, additionally, that Plaintiffs fail to allege *adequately* any material misstatements or omissions, and Plaintiffs rely on the arguments in their motion to dismiss in the related securities action before this Court. By doing so, Defendants attempt to interpose the heightened pleading requirements for fraud claims on Plaintiffs' ERISA claims. Although this ERISA action and the secu-

rities case have commonalities, in that some of the same conduct is alleged in both complaints, the Court has reviewed no compelling authority that convinces it to require Plaintiffs, in this case, to meet the pleading requirements of Federal Rule of Civil Procedure 9(b).

Rule 9(b) provides that: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b). Courts, however, routinely apply only the general, liberal pleading standards of Rule 8 to ERISA claims. As stated by the Court in *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 284 F.Supp.2d 511 (S.D.Tex.2003), "ERISA does not have heightened pleading requirements, but is subject to the notice pleading standard of Fed. R. of Civ. Procedure 8, i.e., 'a short and plain statement of the claim showing that the pleader is entitled to relief' and that provides a defendant with fair notice of the claim against him." *Id.* at 652. *See also In re Worldcom, Inc.*, 263 F.Supp.2d 745, 759 (S.D.N.Y.2003) (applying Rule 8 and finding that it was satisfied even though plaintiff's allegations about defendant's fiduciary status did little more than restate the statutory definition); *Rankin v. Rots*, 278 F.Supp.2d 853, 866 (E.D.Mich.2003) ("Here, [plaintiffs] claim that [defendants] violated their fiduciary duties under ERISA. While some of the allegations in support of their claim are similar to fraud allegations, i.e. that they provided false and misleading information, the gravamen of [plaintiffs'] claim is grounded in ERISA. The heightened pleading requirement under Rule 9(b) will not be imposed where

---

4. The Court notes that this particular issue is controversial and so refuses to decide it here. *See, e.g., In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F.Supp.2d 511, 604–12

(S.D.Tex.2003). As with many other issues raised by Defendants' Motion to Dismiss, the Court declines to decide such issues without a full briefing by the parties, after discovery.

the claim is for a breach of fiduciary duty under ERISA.").

Applying Rule 8, instead of 9(b), to Plaintiffs' claims also is consistent with the Supreme Court's recent reiteration that: "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions. Rule 9(b), for example, provides for greater particularity in all averments of fraud or mistake." *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Although it recognized the 9(b) exception, the Court went on to state, "[t]his Court, however, has declined to extend such exceptions to other contexts," reasoning that:

"the Federal Rules do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions, but do not include among the enumerated actions any reference to complaints alleging municipal liability under § 1983. *Expressio unius est exclusio alterius.*" Just as Rule 9(b) makes no mention of municipal liability ... neither does it refer to employment discrimination. Thus, complaints in [employment discrimination] cases, as in most others, must satisfy only the simple requirements of Rule 8(a).

*Id.,* quoting *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (other citations omitted).

Given the Supreme Court's adoption of the Latin maxim, *expressio unius est exclusio alterius,*[5] on this issue, this Court can discern no reason why, generally, ERISA plaintiffs should have to meet heightened pleading requirements, as opposed to the "simplified notice pleading standard [that] relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz,* 534 U.S. at 512, 122 S.Ct. 992.

This Court, therefore, will evaluate Plaintiffs' Complaint and Defendants' arguments for dismissal with these liberal pleading standards in mind. The ultimate issue will be whether Plaintiffs' allegations give Defendants fair notice of the particular claims and the grounds upon which they rest. The Court now will consider each of Defendants' other arguments for dismissal in turn.

**B. Plaintiffs' Allegations Are a Securities Fraud Claim Cloaked in ERISA Garb**

■ Defendants argue extensively that Plaintiffs' Complaint should be dismissed, lest they would be subject to conflicting bodies of law, namely the federal securities laws and ERISA. According to Defendants, the federal securities laws provide relief for the conduct complained of, such that to allow Plaintiffs any recovery, this Court would be pitting the two bodies of law against each other in a way that Congress did not intend. Defendants would have this Court shelter them under the doctrine of implied immunity, or otherwise, Defendants hypothesize, a "'plain repugnancy' [would develop] between ERISA regulation of the conduct at issue and the SEC's regulatory authority."

Notwithstanding that the doctrine of implied immunity is disfavored, *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976), many courts already have considered and flatly rejected Defendants' argument. *In re Dynegy, Inc. Erisa Litig.,* 309 F.Supp.2d 861, 882 (S.D.Tex.2004) (rejecting defendant's argument for dismissal that "Count I is nothing more than a securities claim in ERISA clothing."); *Vivien v. Worldcom, Inc.,* 2002 WL 31640557, *5 (N.D.Cal. Jul.26, 2002) (unpublished) (despite noting

---

**5.** In English, "The expression of one thing is the exclusion of another."

that, "Defendants raise some legitimate issues which might place federal securities laws and ERISA in tension in the event that recovery eventually occurs in this case," the court went on to reason that "[t]he difficulty, however, is that this case is not at the summary-judgment stage. On its face, the complaint alleges violations of ERISA. It is impossible to rule out as a matter of law any and all ERISA recovery at the pleadings stage simply because federal securities law may provide overlapping relief.").

Most importantly, as the courts reasoned in *WorldCom* and *Dynegy*, this argument, especially, is best reserved for a later stage of litigation. *WorldCom*, 2002 WL 31640557, at *5 ("Indulging all factors that apply on a FRCP 12(b)(6) motion and without knowing specific facts to be developed in the record, this order is unwilling to dismiss on defendants' theory of colliding bodies of law."); *Dynegy*, 309 F.Supp.2d at 882 ("[t]he court cannot rule out the possibility of an ERISA recovery at the pleading stage simply because federal securities law may also provide relief."). *See also In re CMS Energy ERISA Litig.*, 312 F.Supp.2d 898, 915–16 (E.D.Mich.2004) (unpublished) (considering defendants' argument that plaintiff's claims were "repackaged securities fraud claims," but concluding, "[a]bsent factual development, these claims survive defendants' motion to dismiss"). The Court, consequently, refuses to dismiss Plaintiffs' claims on this basis.

## C. Allowing Recovery Would Subject ERISA Administrators to Insider–Trading Liability

■ Next, Defendants argue that if they had disclosed the allegedly relevant, non-public information that AEP was an imprudent investment to the Plan Participants, their conduct would have violated insider-trading laws. Plaintiffs retort that Defendants create a false conflict because nothing prevented Defendants from complying with both the securities laws and their fiduciary obligations. Plaintiffs aver that Defendants could have halted purchases of the Fund, disclosed the non-public information, and then sold the existing Fund shares. Doing so would have mitigated Plaintiffs' losses without running afoul of the insider trading laws.

Indeed, the Amended Plan[6] even acknowledges the possibility of Plaintiffs' suggested course of action. In Article 6. INVESTMENT OF CONTRIBUTIONS, Section 6.3, it reads: "[t]he plan Administrator, Trustee or Recordkeeper may modify or suspend the transfer or exchange of Funds as provided in Section 6.2 for a period of time to protect the interests of the Participants." Amended Plan, p. 22. Hence, it is unavailing for Defendants to argue that they lacked the power, authority or discretion to take such actions.

In addition, other courts have held that a fiduciary could breach its duties by failing to do as Plaintiffs suggested: halt purchases of the Fund, disclose the information, and then sell the existing Fund shares. In *CMS Energy*, the court determined that a claim for breach could be stated where the plan participants alleged that the fiduciary failed to protect the plan's assets by not, "[suspending] investment in CMS stock funds, or requiring investments in the ESOP to be held in cash until an assessment of the prudence

---

**6.** As discussed more fully herein, because the parties present the Court with two different plans, but without arguing which one should apply, the Court is unable to decide that issue now. For purposes of this argument, however, it is appropriate to cite to the Amended Plan, offered by Defendants, to show that even under it, Plaintiffs' suggested course of action may have been plausible and prudent.

of CMS stock investment could be made." 312 F.Supp.2d at 908.

Finally, much like Defendants' previous argument, a myriad of courts have considered and rejected this argument. *See, e.g.,* *In re Enron,* 284 F.Supp.2d at 565 (considering *Hull v. Policy Mgmt. Sys. Corp.,* 2001 WL 1836286 (D.S.C. Feb.9, 2001) (unpublished), and *In re McKesson HBOC, Inc. ERISA Litig.,* 2002 WL 31431588 *6 (N.D.Cal. Sept.30, 2002) (unpublished), and rejecting those courts' adoption of the defendants' argument that complying with ERISA would require violating insider trading laws). The *Enron* court, for example, reasoned:

> Defendants' argument that despite the duty of loyalty, a fiduciary should make no disclosure to the plan participants, because under the securities laws he cannot selectively disclose nonpublic information, translates in essence into an argument that the fiduciary should both breach his duty under ERISA and, in violation of the securities laws, become part of the alleged fraudulent scheme to conceal Enron's financial condition to the continuing detriment of current and prospective Enron shareholders, which include his plan's participants. This Court does not believe that Congress, ERISA or the federal securities statutes sanction such conduct or such a solution, i.e., violating all the statutes and conning the public.

284 F.Supp.2d at 565. *See also Rankin,* 278 F.Supp.2d at 874–78 (same); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,* 312 F.Supp.2d 1165, 1181–82 (D.Minn.2004) ("As to defendants' insider trading argument, the court joins those courts holding that ERISA plan fiduciaries cannot use the securities laws to shield themselves from potential liability for alleged breaches of their statutory duties."); *In re Elec. Data Sys. Corp. "ERISA" Litig.,* 305 F.Supp.2d 658, 673 (E.D.Tex.2004)

("Assuming that Defendants have a duty to communicate with Plan beneficiaries, the Court must also reject Defendants' argument that they could not perform the duty without breaking federal insider trading laws."). This Court, likewise, refuses to dismiss Plaintiffs' claims based on the argument that, to comply with ERISA, Defendants would have had to violate the federal securities laws.

### D. Allowing Recovery Would Supplant the Federal Securities Disclosure Laws

■ In a similar vein, Defendants complain that if Plaintiffs' theory of liability is accepted, it effectively would impose a continuous duty of disclosure upon companies, which would conflict with the securities laws' limited, periodic or factually-prompted duty. Defendants complain that such broadening would have the undesirable result that fewer companies would offer retirement plans because they would not want to subject themselves to such an onerous duty.

The Court does not find this argument persuasive, however, where the information that Plaintiffs contend should have been disclosed, here, arguably was required by both the federal securities laws and ERISA. In this case, at least, Plaintiffs here and those in the securities action, allege that Defendants had a duty, albeit under two statutory regimes, to disclose information that they either knew or should have known suggested that AEP and the Fund may not have been a prudent investment. Whether Plaintiffs ultimately can prove their allegations remains to be seen, but Defendants' theoretical arguments about conflicting bodies of law will not prevent Plaintiffs from having the opportunity to do so.

### E. Allowing Recovery Effectively Would Allow Plaintiffs to Circumvent the *Scienter* Requirement in Securities Fraud Cases

█ Because Plaintiffs' misrepresentation claim (Claim Two) alleges that Defendants "*negligently* misrepresented and failed to disclose material information," Defendants complain that Plaintiffs are attempting to circumvent the *scienter* requirement under the securities laws, again, for what is nothing more than conduct that allegedly violates the securities laws, not ERISA. Defendants' argument, however, is contrary to clear Sixth Circuit precedent holding that, "[a] fiduciary breaches his duty by providing plan participants with materially misleading information, '*regardless of whether the fiduciary's statements or omissions were made negligently or intentionally.*'" *James v. Pirelli Armstrong Tire*, 305 F.3d 439, 449 (6th Cir. 2002) (emphasis added). Thus, this argument of Defendants' provides no basis for dismissal, either.

### F. Plaintiffs Have Failed to Allege Defendants' Fiduciary Status Sufficiently

█ Defendants argue that none of the conduct complained of was done as a fiduciary, so there can be no liability. First, Defendants maintain that they cannot be liable for offering AEP stock as an investment option because an explicit purpose of the Plan was to allow Participants to purchase AEP stock. Second, Defendants argue that Plaintiffs cannot premise their fiduciary status and ERISA liability on preparation of documents required by the federal securities laws. According to Defendants, Plaintiffs attempt to do that by basing their claim, in part, upon allegedly misleading statements in AEP's SEC filings.

Defendants contend, further, that the "ministerial" decision to give Participants a single document, the Summary Plan Description ("SPD"), containing all the information required by both the federal securities laws and ERISA, does not make their conduct fiduciary in nature. Plaintiffs, on the other hand, retort that because Defendants chose to incorporate AEP's SEC filings into the SPD, the SEC filings became fiduciary communications.

The *WorldCom* court, faced with similar facts, allegations by the plaintiffs, and this very argument by the defendants, refused to dismiss that case. It reasoned, "it would be premature to rule out [plaintiff's claim] as a matter of law on the basis that defendants were *not* acting in a fiduciary capacity when issuing summary plan descriptions merely because the descriptions incorporated by reference SEC filings presumably undertaken in a corporate capacity." 2002 WL 31640557, at *7. This Court concurs with *WorldCom* that dismissal on this basis, at this time, would be inadvisable. *See also Dynegy*, 309 F.Supp.2d at 888 (finding that when fiduciaries issued an SPD and then merely encouraged participants to review the company's SEC filings, fiduciaries "also triggered an affirmative duty to disclose material adverse information that [they] knew or should have known regarding the risks and appropriateness of investing in company stock. The court concludes, therefore, that plaintiff has stated a breach of fiduciary duty claim against the [defendants] for failing to disclose information material to investing in company stock.").

█ Next, regarding AEPSC, Defendants argue that although AEPSC is the named fiduciary, it only can be deemed a fiduciary to the extent that it performed conduct outlined in the Complaint *in a fiduciary capacity*. As for AEP, it is not a named fiduciary, nor do Plaintiffs allege that it is. Instead, Defendants aver, Plaintiffs attempt to create fiduciary status by

relying on conclusory allegations, coupled with non-related ERISA conduct or arguing that because the Plan Participants perceived AEP as a fiduciary, it is.

Finally, Defendants contend that the allegations pertaining to the Director Defendants, likewise, are insufficient. It is not enough, Defendants assert, for Plaintiffs to claim "that the Individual Defendants were fiduciaries because they allegedly appointed, at some unspecified time, certain unspecified individuals to make investment decisions for the Plan." Furthermore, Plaintiffs do not allege, as they must according to Defendants, that the Individual Defendants understood that they were acting in a fiduciary capacity by allegedly making appointments to individuals to make investment decisions for the Plan. Such "awareness of their accountability," Defendants aver, is necessary both to protect potential defendants and ERISA plan participants.

Plaintiffs reject the contention that their allegations are insufficient. AEPSC is the Named Fiduciary and Plan Administrator, per the Plan. As a matter of law, then, AEPSC is a fiduciary for all purposes, Plaintiffs argue. Additionally, the Complaint alleges that the functional identities of AEPSC and AEP essentially are the same, such that AEP maintained control over its subsidiary, as did the Director Defendants. The SPD, in fact, identified AEP as the fiduciary without distinguishing between it and AEPSC, Plaintiffs point out. As for the Director Defendants, the Complaint alleges that "in the exercise of their fiduciary duties to monitor, the Director Defendants should have prevented the SEC filings from being disseminated to Participants," which is sufficient, Plaintiffs contend, to allege the Director Defendants' requisite fiduciary status and conduct.

According to 29 U.S.C. § 1002(21)(A):

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

In this Circuit, "anyone who exercises authority over an employee benefit plan can properly be held an ERISA fiduciary because that term was intended to be interpreted broadly by Congress ..." *Brock v. Hendershott,* 840 F.2d 339, 342 (6th Cir. 1988).

■ Hence, at this early stage of litigation, Plaintiffs' allegations are sufficient to survive a motion to dismiss, especially where the weight of authority recognizes that the term "fiduciary" is to be liberally construed, consistent with the remedial purposes of ERISA. *See also In re Enron,* 284 F.Supp.2d at 544, quoting *Ariz. State Carpenters Pension Trust Fund v. Citibank,* 125 F.3d 715, 720 (9th Cir.1997), citing *John Hancock Mut. Life Ins. v. Harris Trust & Sav. Bank,* 510 U.S. 86, 96, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993), and quoting *Mertens,* 508 U.S. at 262, 113 S.Ct. 2063 (" 'Fiduciary status under ERISA is to be construed liberally, consistent with ERISA's policies and objectives,' and is defined 'in functional terms of control and authority over the plan, ... thus expanding the universe of persons subject to fiduciary duties—and to damages—under § 409(a).' "); *see also Xcel Energy,* 312 F.Supp.2d at 1176 ("Implicit in the fiduciary duties attaching to persons empowered to appoint and remove plan fiduciaries is the duty to monitor appointees."); *WorldCom,* 2002 WL 31640557, at *4 ("officers and directors are not shielded from personally becoming a fiduciary because he or

she acted on behalf of a corporation that was designated as a 'named fiduciary'...").

▮ Furthermore, this Court subscribes to the view that fiduciary status is a fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss. As explained by the district court in *Rankin v. Rots*:

> the manner in which each defendant, which are in the universe of possible decision makers, operated is for now something of a black box. To expect a plaintiff to be able to turn on the light and point to the particular individuals who exercised decision making authority is simply too much to require at this stage of the case.

278 F.Supp.2d at 879. *See also Elec. Data Sys.*, 305 F.Supp.2d at 665 ("It is typically premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings ... under Federal Rule of Civil Procedure 8(a)'s notice pleading requirements, courts will typically have insufficient facts at the motion to dismiss stage from which to make the law/fact analysis necessary to determine functional or named fiduciary status."); *CMS Energy*, 312 F.Supp.2d at 907–09 (holding fiduciary status could not be determined on a motion to dismiss.). Therefore, dismissal is not warranted based on Defendants' argument that Plaintiffs have not alleged, sufficiently, their status as fiduciaries.

### G. Plaintiffs' Allegations in Claims One and Two Fail as a Matter of Law

#### 1. Breach of the Duty of Prudence

▮ Pursuant to the duty of prudence, a fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). The prudence standard is an objective one, and good faith is not a viable defense. *In re Enron*, 284 F.Supp.2d at 548. ERISA, however, has some carve out exceptions for plans meeting certain qualifications. One such exception is an Employee Stock Ownership Plan ("ESOP").

As explained by the Court in *Chao v. Hall Holding Co.*:

> Under ERISA, a plan that primarily invests in the shares of stock of the employer that creates the plan is referred to as an ESOP. Congress intended ESOPs to function as both an employee retirement benefit plan and a technique of corporate finance that would encourage employee ownership. Because of these dual purposes, ESOPs are not designed to guarantee retirement benefits, and they place employee retirement assets at much greater risk than the typical diversified ERISA plan.

285 F.3d at 425 (internal citations omitted). Because of the unique nature of ESOPs, the Sixth Circuit has held:

> a proper balance between the purpose of ERISA and the nature of ESOPs requires that we review an ESOP fiduciary's decision to invest in employer securities for an abuse of discretion. In this regard, we will presume that a fiduciary's decision to remain invested in employer securities was reasonable. A plaintiff may then rebut this presumption of reasonableness by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision.

*Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir.1995). Despite the presumption of reasonableness accorded to fiduciaries regarding decisions to remain invested in employer securities, ESOP fiduciaries still are held to high standards of care. As explained by the *Chao* court:

Even though ESOPs can be much riskier than a typical ERISA plan, the fiduciaries of these plans are still held to their fiduciary responsibilities, because the statutory exemptions for ESOPs do[ ] not relieve a fiduciary ... from the general fiduciary responsibility provisions of [29 U.S.C. § 1104] which, among other things, require a fiduciary to discharge his duties respecting the plan solely in the interests of plan participants and beneficiaries and in a prudent fashion ... nor does it affect the requirement ... that a plan must be operated for the exclusive benefit of employees and their beneficiaries.

*Chao*, 285 F.3d at 425.

Defendants aver that the Fund qualifies as an ESOP, and Plaintiffs cannot overcome the presumption that it was reasonable to remain invested in AEP stock, especially where such was an explicit purpose and directive of the Plan. In fact, Defendants argue, such a showing would be impossible because investing in AEP stock was and continues to be reasonable, as evidenced by analysts' evaluations of AEP stock.

Plaintiffs dispute that the Fund qualifies as an ESOP, and argue that even if it did, Defendants cannot escape liability for their imprudent investments. First, Plaintiffs argue, the Fund is not, itself, a "plan" that could qualify as an ESOP; rather it merely is a *plan investment option.* Second, Plaintiffs state that the Plan is not an ESOP, and Defendants do not allege that it is. Thus, Plaintiffs posit, "even if the Plan did not expressly confer on defendants the power to designate the Fund as an investment option, and even if the Plan was required to invest in the Fund, and even if the Fund somehow qualified as an ESOP ... the decision to maintain the AEP Stock Fund as an investment option under *the Plan* would still give rise to defendants' fiduciary status because the Plan was not an ESOP." Accordingly, Plaintiffs argue, ESOP principles should not be applied to this case. Finally, Plaintiffs point to the language of the Plan which states that the Fund is invested "primarily" in AEP stock, as proof that Defendants had the discretion and an obligation, as fiduciaries, to remove the Fund from AEP stock if it was imprudent.

▬ A fiduciary cannot escape liability merely by pointing to the Plan as requiring it to act as it did. *See* 29 U.S.C. § 1104(a)(1)(D) (setting forth that fiduciary must comply with plan instruments *only to the extent that they are consistent with the other provisions of § 1104,* including the duties of loyalty and prudence). Even where a fiduciary acts consistent with the plan's directives, the fiduciary may be liable if the actions were not in the participants' best interests (e.g., if they were found to have been imprudent). *See, e.g., Xcel Energy,* 312 F.Supp.2d at 1180–81. *See also In re Sears, Roebuck & Co. ERISA Litig.,* 2004 WL 407007, *4 (N.D.Ill. Mar.3, 2004) (unpublished) (finding plaintiffs had stated a claim for breach where they had alleged that, " 'blindly following' the Plan provisions requiring matching contributions to be made in [the company's] stock would be imprudent, in violation of ERISA fiduciary duties, when the [defendants] knew or should have known the price of the stock was fraudulently inflated.").

Next, while it is true that the Sixth Circuit has adopted the presumption of reasonableness for ESOPs, *Kuper,* 66 F.3d at 1459, it is neither necessary nor appropriate for the Court, at this juncture, to make a determination of whether the Plan[7] or the Fund qualifies as an ESOP.

---

7. This is especially true where, as here, it is not clear to the Court *which* plan controls.

As the *Xcel Energy* court explained, "presumptions are evidentiary standards that should not be applied to motions to dismiss." 312 F.Supp.2d at 1180. *See also Elec. Data Sys.*, 305 F.Supp.2d at 669–70 (acknowledging that "[g]enerally, courts should not apply evidentiary standards at the motion to dismiss stage because doing so conflicts with Federal Rule of Civil Procedure 8(a)," and holding that, "requiring Plaintiffs to affirmatively plead facts overcoming the ESOP presumption violates Rule 8(a)'s notice pleading requirement."). *Cf. Lalonde v. Textron, Inc.*, 270 F.Supp.2d 272, 280 (D.R.I.2003).

Additionally, even assuming the Plan or Fund did qualify as an ESOP, Defendants' Motion to Dismiss still should be denied because such determinations are appropriate only after discovery leads to a developed factual record. *See, e.g., In re Enron*, 284 F.Supp.2d at 534, n. 3; *see also Moench v. Robertson*, 62 F.3d 553, 568–71 (3d Cir.1995).

 Defendants argue, however, that they are not liable for the additional reason that the Plan Participants made their own investments decisions, including whether to put money into the Fund at all, and whether and when to purchase and sell its shares. Plaintiffs respond that, as a matter of law, liability for imprudent investments still can attach unless the plan fiduciaries meet all the requirements under § 404(c), which, they contend, Defendants did not.

 Section 404 of ERISA provides:
(c) Control over assets by participant or beneficiary
(1) In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary)—

(A) such participant or beneficiary shall not be deemed to be a fiduciary by reason of such exercise, and

(B) no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control.

29 U.S.C. § 1104. The determination of whether an ERISA plan is an individual account plan is fact-intensive. *In re Enron*, 284 F.Supp.2d at 578–79. Courts must look to the evidence and determine whether the participants could move their assets from one fund to another and whether the plan provided the participants with ample information, including adequate information to understand and evaluate the risks and consequences of alternative investment options. *Id.* Courts also inquire into whether the participants were provided information about their rights and the obligations of the plan's fiduciaries. *Id.* Such information, however, comes only from discovery. For this reason, courts routinely refuse to dismiss an ERISA action because the defendant argues § 404(c) applies. As the *Rankin* court stated:

Regardless of any merit it may have, this argument is premature at this stage in the case. Whether or not section 404(c) applies is not a question on a motion to dismiss. Section 404(c) provides defendants with a defense to liability; it does not mean that Rankin has failed to make out a claim against them.

278 F.Supp.2d at 872. *See also WorldCom*, 2002 WL 31640557, at *6.

 Moreover, as the *Enron* court explained, "the fiduciary seeking protection under § 404(c), and not the plaintiff, has the burden of demonstrating that it applies." 284 F.Supp.2d at 578. *See also In re Unisys Sav. Plan Litig.*, 74 F.3d 420,

446 (3d Cir.1996). In other words, § 404(c) is in the nature of an affirmative defense, which generally is not an appropriate consideration on a motion to dismiss. *See, e.g., U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 626 (7th Cir.2003) ("Complaints need not anticipate or attempt to defuse potential defenses. A complaint states a claim on which relief may be granted when it narrates an intelligible grievance that, if proved, shows a legal entitlement to relief. A litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense, but this complaint does not do so; the district judge thought, rather, that the complaint had failed to overcome the defenses. As complaints need not do this, the omissions do not justify dismissal."). This is true, *a fortiori,* here, where there is a dispute about which plan controls the disposition of this case.

In their pleadings, the parties cite to two different "plans." Defendants cite to the American Electric Power System Retirement Savings Plan that was Amended and Restated as of January 1, 2003 (hereinafter "Amended Plan"). According to this plan:

> The purpose of the American Electric Power System Retirement Savings Plan is to establish a convenient way for employees of the Companies of the American Electric Power System to supplement their retirement income by saving on a regular and long-term basis and to acquire shares of common stock of American Electric Power Company, Inc.

Amended Plan, Article 1. PURPOSE AND EFFECTIVE DATE, p. 1. Such language suggests a component of the Plan, at least, may qualify as an ESOP.

Plaintiffs, however, cite from a document titled, American Electric Power System Employee Savings Plan Trust, with a cover sheet stating, "Dated as of October 1, 1995" (hereinafter "Trust Plan").

Therein, there are declarations such as, "Trustee is willing to hold and invest the aforesaid plan assets in trust *among several investment options selected* by the Named Fiduciary," suggesting that one of AEPSC's administrative functions, at least, was to select the investment options, and perhaps to monitor and reassess the prudence of those options. This plan, of course, lends more credence to Plaintiffs' arguments.

Neither party, however, explains to the Court which Plan *actually* controlled during the Class Period or which plan *should* control in deciding this Motion. The failure to do so, at least insofar as Plaintiffs are concerned, may be explained by the lack of discovery; hence, making unwise dismissal before discovery can be had.

The standard of assessment for the duty of prudence further illustrates why discovery is necessary to prove Plaintiffs' claims. As explained by the Third Circuit, "courts measure section 1104(a)(1)(B)'s 'prudence' requirement according to an objective standard, focusing on a fiduciary's conduct in arriving at an investment decision, not on its results, and asking whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *In re Unisys Sav. Plan Litig.*, 74 F.3d at 434. It would be unreasonable to expect, however, that Plaintiffs would possess such detailed evidence about Defendants' investigative efforts (or lack thereof) prior to discovery.

Finally, even if the Court ultimately were to determine that the Plan qualified under 404(c), Defendants would not necessarily be absolved of liability. As the *Unisys* court explained:

> We can discern no reason why our admonitions that "when a [fiduciary] speaks, it must speak truthfully[ ]", and when it communicates with plan participants and beneficiaries it must "convey

complete and accurate information that [is] material to [their] circumstance [ ]", should not apply to alleged material misrepresentations made by fiduciaries to participants regarding the risks attendant to a fund investment, where, as here, the participants were charged with directing the investment of their contributions among the Plans' various funds and the benefits they were ultimately provided depended on the performance of their investment choices.

\*　\*　\*　\*　\*　\*

[W]e find a number of triable issues. Clearly there is evidence of several communications made by Unisys to plan participants on an individual, group or systematic basis regarding the nature of and risks associated with investments in the Fixed Income and Insurance Contract Funds and Executive Life's downturn. Whether the communications constituted misrepresentations and whether they were material under the principles we have articulated are questions of fact that are properly left for trial.

74 F.3d at 442–43 (internal citations omitted). This Court agrees.

■ Just because participants allegedly make their own investment choices, fiduciaries are not immune for misrepresentations or omissions that they make to participants regarding the plan or its likely future benefits. *See Rankin*, 278 F.Supp.2d at 879 ("[T]he fact that the Plan requires investment in [company] stock will not *ipso facto* relieve the Outside Directors of their fiduciary obligations to prudently invest or to diversify. Second, whether or not they have breached their fiduciary duties requires development of the facts of the case. The result of these two points is that [plaintiff] has stated a claim against them; whether or not she will prevail is another matter to be determined later.").

## 2. Misrepresentations by a Fiduciary and Failure to Disclose Material Information

■ To establish a claim for breach of fiduciary duty based on alleged misrepresentations, a plaintiff must show that: (1) defendant was acting in a fiduciary capacity when it made the challenged statements; (2) the statements constituted material misrepresentations; and (3) plaintiff relied on them to his/her detriment. *Pirelli Armstrong Tire Corp.*, 305 F.3d at 449. The Sixth Circuit held long ago that, "a fiduciary may not materially mislead those to whom the duties of loyalty and prudence described in 29 U.S.C. § 1104 are owed." *Berlin v. Mich. Bell Tel. Co.*, 858 F.2d 1154, 1163 (6th Cir.1988). Other courts have deemed it unlawful for a fiduciary to affirmatively miscommunicate or mislead plan participants about material matters regarding the plan. *See, e.g., In re Enron*, 284 F.Supp.2d at 555.

The Third Circuit has held that: "an ERISA fiduciary has a duty under section 1104(a) to convey complete and accurate information when it speaks to participants and beneficiaries regarding plan benefits." *Unisys*, 74 F.3d at 441. Subsequently, too, the Sixth Circuit stated, in *Pirelli*, that "with respect to the situation presented when an employer on its own initiative disseminates false and misleading information about a benefit plan, the position of the Sixth Circuit is aligned with that of the Third Circuit in *Unisys*." 305 F.3d at 455.

■ In response to Claim Two, Defendants argue that Plaintiffs fail to identify any material misrepresentations or omissions either in AEP's SEC filings or the Plan documents; and, furthermore, that Plaintiffs improperly rely on the fraud on the market theory, available only in securities fraud cases, to prove causation. Secondly, Defendants contend, Plaintiffs have not averred the facts necessary to allege

sufficiently that the Individual Defendants breached their duty to monitor, and Plaintiffs' claim of co-fiduciary liability is deficient, for the same reason. Plaintiffs refute these contentions by averring that the misstatements and omissions in the SEC filings, which were incorporated into the SPD, were material and misleading, as were the Plan documents themselves. Plaintiffs argue, moreover, that the Complaint adequately pleads reliance.

First, Defendants' contention that Plaintiffs fail to allege any material misrepresentations or omissions is not persuasive on a motion to dismiss. "Whether the communications constituted misrepresentations and whether they were material under the principles we have articulated are questions of fact that are properly left for trial." *Unisys*, 74 F.3d at 443.

With respect to Plaintiffs' claim that Defendants misled them by failing to disclose certain information, it is axiomatic that ERISA expanded a fiduciary's duties of disclosure. "Under the common law, a fiduciary's duty to disclose was generally triggered by a specific request from a beneficiary." *Xcel Energy*, 312 F.Supp.2d at 1176. Now, however, "once one who is acting in a fiduciary capacity endeavors to discuss the plan, he may 'not affirmatively miscommunicate or mislead plan participants about material matters regarding their ERISA plan.' In short, 'lying is inconsistent with the duty of loyalty owed by all fiduciaries....'" *Id.* (internal citations omitted).

The law regarding a fiduciary's duty of disclosure, however, "is both controversial and evolving." *Id.* at 1182. For that reason, courts have refused to grant defendants' motions to dismiss on this issue. *See, e.g., id.* ("[T]he issue is more amenable to resolution on a motion for summary judgment after discovery has shed further light on the facts and circumstances of the case."). This Court, again, agrees that

such issues are not appropriately decided on a motion to dismiss.

### 3. Failure to Monitor

As for Plaintiffs' allegations regarding failure to monitor, which Defendants profess are insufficient, Plaintiffs aver in ¶ 50, *inter alia*, that:

> [T]he Director Defendants appointed, monitored, and removed the AEP employees who made the Plan investment decisions. In connection therewith, the Director Defendants had a duty to appoint persons with sufficient education, knowledge and experience to inform themselves as necessary to perform their duties to evaluate the merits of Plan investment option. The Director Defendants also had an ongoing duty to ensure that the persons appointed were performing these duties properly with respect to the selection of Plan investment options and the investment of Plan assets.

There can be no doubt that the ERISA statutory scheme imposes a duty to monitor upon fiduciaries when they appoint other persons to make decisions about the plan. According to 29 C.F.R. § 2509.75–8: "[a]t reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan."

Courts, as well, have recognized the duty. *See, e.g., Xcel*, 312 F.Supp.2d at 1176 ("A person with discretionary authority to appoint, maintain and remove plan fiduciaries is himself deemed a fiduciary with respect to the exercise of that authority. Implicit in the fiduciary duties attaching to persons empowered to appoint and remove plan fiduciaries is the duty to monitor appointees.") (internal citations omit-

ted); *Elec. Data Sys.*, 305 F.Supp.2d at 670 ("ERISA law imposes a duty to monitor appointees on fiduciaries with appointment power.").

Where the duty to monitor is irrefutable and this litigation is in its infancy, Plaintiffs' allegations are sufficient to meet the requirements of Rule 8(a), especially where further factual development cannot occur without discovery. *See CMS Energy*, 312 F.Supp.2d at 916–17 (considering arguments by the defendants that the plaintiffs had failed to state a claim for duty to monitor, but deciding, "[b]y virtue of the status of this litigation, development of what fiduciary duties were delegated by defendants has not occurred," and thereby concluding that dismissal was not warranted).

### 4. Liability of Co–Fiduciaries

■ Regarding the sufficiency of Plaintiffs' allegations of co-fiduciary liability, ERISA states:

In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a). In paragraphs 56 and 71, Plaintiffs allege that Defendants engaged in all of that conduct. Thus, once again, under Rule 8, Plaintiffs' allegations amply put Defendants on notice. In addition, there is no vicarious liability as a co-fiduciary, making it necessary for Plaintiffs to prove actual knowledge by the co-fiduciaries of the other fiduciary's breach. *Id.* at § 1105(a)(1). Plaintiffs will need to take depositions and engage in other discovery to obtain such information. Hence, what Plaintiffs have alleged thus far is sufficient under Rule 8 to entitle Plaintiffs to further discovery.

Other courts have declined to dismiss co-fiduciary claims on the basis that they also had declined to dismiss the plaintiffs' fiduciary liability claims. *See, e.g., CMS Energy*, 312 F.Supp.2d at 910 ("Having declined to dismiss the fiduciary liability claims, the court will also decline to dismiss any of the co-fiduciary liability claims at this juncture."). That course of action seems prudent to this Court, as well.

### 5. Reliance

■ As for Defendants' argument that Plaintiffs have failed to allege reliance, in ¶ 68 of the Complaint, Plaintiffs allege: "[t]he Plan, and the Participants acting on behalf of the Plan, relied upon, and are presumed to have relied upon, Defendants' representations and nondisclosures to their detriment." Under Rule 8, Plaintiffs have sufficiently plead reliance, especially where other courts have found such allegations sufficient under even Rule 9(b)'s heightened pleading requirements. *See, e.g., FRC Int'l, Inc. v. Taifun Feuerloschgeratebau und Vertriebs GmbH*, 2002 WL 31086104, *12 (N.D.Ohio Sept.4, 2002) (unpublished) (allegation that "Plaintiff justifiably and actually did rely upon defendants' misrepresentations of fact, and defendants' concealment and omissions of fact" was sufficient to prevent dismissal of RICO claim).

## VI. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **DENIED** in its entirety.

**IT IS SO ORDERED.**